UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SMARTLING, INC., | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | |
| | * | 1:14-cv-13106-ADB |
| EASYLING LLC and | * | |
| SKAWA INNOVATION LTD., | * | |
| | * | |
| Defendants. | * | |

**ORDER**

BURROUGHS, D.J.

Presently before the Court is Plaintiff's Motion to Dismiss Defendants' Counterclaim [ECF No. 35]. For the following reasons, that motion is DENIED.

**I.    BACKGROUND**

On November 4, 2015, Plaintiff Smartling, Inc. ("Smartling") filed an Amended Complaint in this action, alleging six claims against Defendants Easyling LLC and Skawa Innovation LTD (together, "Skawa") for alleged acts of unfair competition, passing off, false designation of origin, and trade dress infringement. [ECF No. 25].

On November 30, 2015, Skawa filed an Answer to Plaintiff's Complaint, as well as a one-count Counterclaim alleging that Smartling committed unfair or deceptive acts or practices and acts of unfair competition, in violation of Massachusetts General Laws Chapter 93A, §§ 2 and 11. [ECF No. 33, hereinafter "Counterclaim"). In support of its Chapter 93A claim, Skawa alleges that Smartling's claims in this lawsuit are "objectively meritless," and that this action represents a "further attempt by [Smartling] to interfere directly with the business relationships of Defendant Skawa and to harm and oppress Defendant through the use of this governmental

1

process as an anticompetitive weapon." [Counterclaim, ¶ 33]. Skawa specifically alleges that, upon information and belief, Smartling's agents or employees have "repeatedly claimed to potential clients of Defendant Skawa and others at exhibitions and elsewhere that . . . Skawa would be driven into bankruptcy by this litigation." Id. ¶ 27. Skawa further alleges that those representations "inherently and falsely suggest" that Skawa was in a precarious financial position, and that these statements are indicative of Plaintiff's ulterior motives in filing this lawsuit. Id. ¶ 28. The Counterclaim also alleges that although Smartling became aware of Easyling's allegedly unlawful conduct in March 2012, it did not file the present lawsuit until July 2014, nearly two and one-half years later. Id. ¶ 30. Finally, Skawa alleges that after Smartling filed its Complaint in this action, Smartling's CEO encountered Skawa's CEO at a language industry conference. Id. ¶ 30. Smartling's CEO allegedly told Skawa's CEO that the United States had a "specific law to protect U.S. companies against foreign ones," and that he intended to "vanish Easyling from the ground." Id.[1]

Smartling moves to dismiss Skawa's counterclaim pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief may be granted. Smartling's argument is twofold: first, it contends that the facts alleged do not make out a plausible claim under Chapter 93A; second, Smartling argues that the statements it allegedly made to Skawa's potential clients and others are "protected by the litigation privilege." [ECF No. 36]. Skawa filed an Opposition to Smartling's Motion to Dismiss [ECF No. 37], arguing that the Motion should be denied because Skawa adequately pleads a Chapter 93A claim, and because the litigation privilege is not applicable.

---

[1] Skawa Innovation Ltd. is a Hungarian company with its principal place of business in Budapest. [Counterclaim, ¶ 1].

2

II.     **ANALYSIS**

   **A.  Legal Standard**

Under the notice pleading standard of Federal Rule of Civil Procedure 8(a)(2), a plaintiff

is required to submit "a short and plain statement of the claim" in order to give the defendant

"fair notice" of the claim and the grounds upon which it rests. Bell Atl. Corp. v. Twombly, 550

U.S. 544, 555 (2007). Although notice pleading does not require detailed factual allegations,

"more than labels and conclusions" are needed to survive a motion to dismiss. Id. The facts

alleged must "raise a right to relief above the speculative level" and a "formulaic recitation of the

elements of a cause of action" is not enough. Id.

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6),

the Court accepts as true all well-pleaded facts in the complaint and analyzes those facts "in the

light most hospitable to the plaintiff's theory, and drawing all reasonable inferences for the

plaintiff."  United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir.

2011). However, courts are not bound to accept as true legal conclusions couched as factual

allegations. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Dismissal for failure to state a claim is

appropriate 'if the complaint does not set forth factual allegations, either direct or inferential,

respecting each material element necessary to sustain recovery under some actionable legal

theory.'" Lemelson v. U.S. Bank Nat'l Ass'n, 721 F.3d 18, 21 (1st Cir. 2013) (quoting United

States ex rel. Hutcheson, 647 F.3d at 384) (further internal quotations omitted).

   **B.  Skawa adequately pleads a Chapter 93A claim.**

Massachusetts General Laws Chapter 93A, Section 2(a) prohibits "unfair methods of

competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

Mass. G. L. c. 93A, § 2(a). "It is well established that 'a practice or act [is] unfair under G.L. c.

93A, § 2, if it is (1) within the penumbra of a common law, statutory, or other established

concept of unfairness; (2) immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to competitors or other business people.'" Milliken & Co. v. Duro Textiles, LLC, 451 Mass. 547, 562-63 (2008) (quoting Morrison v. Toys "R" Us, Inc., 441 Mass. 451, 457 (2004) (alteration in original). "'Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact ... the boundaries of what may qualify for consideration as a c. 93A violation is a question of law.'" Milliken, 451 Mass. at 563 (quoting Schwanbeck v. Federal-Mogul Corp., 31 Mass. App. Ct. 390, 414 (1991)) (omission in original).

Smartling recognizes that Skawa's Chapter 93A claim appears to be based primarily on an "abuse of process" theory. "The elements of an abuse of process claim are 'that "process" was used, for an ulterior or illegitimate purpose, resulting in damage.'" Psy-Ed Corp. v. Klein, 459 Mass. 697, 713 (2011) (quoting Millennium Equity Holdings, LLC v. Mahlowitz, 456 Mass. 627, 636 (2010)). The requirement of an "ulterior purpose," however, "is not satisfied merely by a showing that a person commenced litigation knowing it was groundless." Klein, 459 Mass. at 713. Instead, the ulterior purpose "must be to gain some collateral advantage," id. at 713-14, with "collateral" meaning "collateral to the legitimate purposes of the proceeding." Id. at n. 36; see also Broadway Mgmt. Servs. Ltd. v. Cullinet Software, Inc., 652 F. Supp. 1501, 1503 (D. Mass. 1987) (noting that "ulterior motive" is "more than the intent to harass; there must be intention to use process for coercion or harassment to obtain something not properly part of the suit"). Smartling argues that Skawa's factual allegations, even taken as true, do not state a plausible Chapter 93 claim based on abuse of process, because "they do not suggest that Smartling is using this suit for a pernicious purpose unrelated to the subject matter of its claims." [ECF No. 36].

The Court disagrees. Accepting all the allegations as true, and drawing all reasonable inferences in favor of Skawa, the Counterclaim pleads facts sufficient to plausibly suggest that

Smartling did in fact use this lawsuit as a tool to interfere with Skawa's prospective business relationships.

In Datacomm Interface, Inc. v. Computerworld, Inc., the plaintiff filed an unfair competition action against a competitor and obtained an injunction restraining the defendant from using a particular trade name to promote its national data communications trade show. 396 Mass. 760, 762 (1986). The defendant counterclaimed, alleging claims for, *inter alia*, abuse of process. Id. The judge referred the case to a special master, who ruled in favor of the defendant on its abuse of process claim. The master made specific findings that the plaintiff "knowingly misstated the facts in the verified complaint;" that the plaintiff obtained a temporary restraining order against the defendant; and that plaintiffs' actions following the issuance of the restraining order "manifested its intention to use the litigation as a marketing tool" against the defendant's trade show, including launching a "promotional plan which insinuated that [trade show] would not take place." Id. at 775. On appeal, the Massachusetts Supreme Judicial Court ("SJC") affirmed the ruling on the abuse of process claim, holding that "the fact that [plaintiff's] unfair competition action was instituted at least in part as a marketing tool shows a misuse of the legal process." Id. at 776. The SJC further held that such conduct not only established abuse of process, but also "falls within the concept of 'unfair acts' prohibited by G.L. c. 93A." Id. at 779; see also Boothroyd Dewhurst, Inc. v. Poli, 783 F. Supp. 670, 678 (D. Mass. 1991) (agreeing with defendant that "if plaintiff instituted its copyright infringement suit knowing that the claim was groundless, and proceeded to send notices of the pending litigation to defendant's potential customers, its conduct would violate chapter 93A."), superseded by statute on other grounds, as noted in Kasco Corp. v. Gen. Servs., Inc., 905 F. Supp. 29, 33 (D. Mass. 1995).

Here, Skawa alleges that (1) the allegations in Smartling's Complaint are baseless; (2) Smartling made statements to Skawa's prospective clients and others suggesting that this suit would drive Skawa into bankruptcy, and otherwise discouraged such clients from doing business with Skawa; and (3) Smartling's CEO threatened to "vanish [Skawa] from the ground." [Counterclaim, ¶¶ 20-33]. Thus, Skawa has alleged facts plausibly suggesting that Smartling may have used this lawsuit—at least in part—as a tool to interfere with Skawa's prospective business relationships. Datacomm, 396 Mass. at 766; see also Refuse & Envtl. Sys., Inc. v. Indus. Servs. of Am., Inc., 932 F.2d 37, 42 (1st Cir. 1991) (affirming verdict for plaintiff on abuse of process claim, and holding that jury "could reasonably have inferred that [defendant] knowingly and intentionally used a baseless lawsuit to attempt to drive [plaintiff] out of business.").

Although the facts alleged in the Counterclaim are not particularly robust, they are sufficient, for purposes of a motion to dismiss, to nudge Skawa's Chapter 93 claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570; see also Gen. Elec. Co. v. Lyon, 894 F. Supp. 544, 552 (D. Mass. 1995) (denying motion to dismiss abuse of process counterclaim, despite observation that defendant may "face serious barriers" in ultimately proving the claim).

Smartling also argues that the allegations in Skawa's Chapter 93A claims must be dismissed because the communications at issue are protected by the litigation privilege. The Court declines to dismiss Skawa's Chapter 93A claim on privilege grounds, for two reasons.

First, in Massachusetts, the litigation privilege only "applies to '[s]tatements made in the course of a judicial proceeding which pertain to that proceeding.'" Dear v. Devaney, 83 Mass. App. Ct. 285, 291, (2013) (quoting Correllas v. Viveiros, 410 Mass. 314, 319 (1991) (alteration in original). "At the core of the privilege are pertinent statements made by judges, lawyers, and

witnesses at the judicial proceeding." Dear, 83 Mass. App. Ct. at 291. The privilege "rests upon a public policy of securing to the parties the utmost freedom in their efforts to secure justice for the settlement of their private disputes." Milford Power Ltd. P'ship v. New England Power Co., 918 F. Supp. 471, 485-86 (D. Mass. 1996) (citing Sriberg v. Raymond, 370 Mass. 105, 109 (1976)). Accordingly, the courts have declined to apply the litigation privilege in cases where a litigant makes statements to the third-party news media, because such communications "will not generally inhibit parties or their attorneys from fully investigating their claims or completely detailing them for the court or other parties," and because the "important factor of judicial control is absent." Robert L. Sullivan, D.D.S., P.C. v. Birmingham, 11 Mass. App. Ct. 359, 362 (1981). The privilege may not be "'exploited' as an opportunity to defame with immunity," and the privilege "can be lost by 'unnecessary or unreasonable publication to one for whom the occasion is not privileged.'" Milford Power, 918 F. Supp. at 486 (quoting Sullivan, 11 Mass. App. Ct. at 362). Here, the alleged statements in question were not made by or to a lawyer, witness, or judge; nor were they made "in the course of" a judicial proceeding. Instead, the statements were allegedly made to third parties (i.e., Skawa's prospective clients) who were not involved in the litigation, presumably for the purpose of dissuading those third parties from doing business with Skawa. Thus, it is doubtful that the litigation privilege has any application to the conduct alleged in Skawa's Counterclaim.

Second, even assuming that the privilege could protect Smartling's alleged conduct, privilege is generally an affirmative defense to liability, and a plaintiff is not required to plead the *absence* of privilege in order to state an actionable claim. See Williams v. B & K Med. Sys., Inc., 49 Mass. App. Ct. 563, 573 (2000). Furthermore, the existence of a litigation privilege is a fact-dependent question, and thus not amenable to resolution on a motion to dismiss.

## III.     CONCLUSION

For the foregoing reasons, Smartling's Motion to Dismiss Skawa's Counterclaim is hereby <u>DENIED</u>.

**SO ORDERED.**

Dated: March 9, 2016                                    /s/ Allison D. Burroughs
                                                       ALLISON D. BURROUGHS
                                                       U.S. DISTRICT JUDGE