# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

_____
}
SMARTLING, INC.,             }
            }
    Plaintiff,    }
            }
    v.        }
            }
SKAWA INNOVATION LTD.,    }
            }
    Defendant.    }
_____}

CIVIL ACTION NO. 14-cv-13106-ADB

Hon. Judge Allison D. Burroughs

### DEFENDANT'S PROPOSED INSTRUCTIONS TO THE JURY

Defendant Skawa Innovation Ltd. submits the proposed jury instructions set forth below with respect to Counts I-IV of Plaintiff's First Amended Complaint [ECF No. 25], which are based on claims of trademark and trade dress infringement.

## I.  General Instructions.

At the Court's discretion.

## II.  Trade Dress Infringement

## A.  DEFINITION–TRADE DRESS:

Trade dress is the non-functional physical detail and design of a product or its packaging, which identifies the product's source and distinguishes it from the products of others.

1

Trade dress is the product's total image and overall appearance, and may include features such as size, shape, color, color combinations, texture, or graphics. In other words, trade dress is the form in which a person presents a product or service to the market, its manner of display.

A person who uses the trade dress of another may be liable for damages.

*Source: Manual of Model Jury Instructions No. 15.3, United States Courts for the Ninth Circuit; (15 U.S.C. § 1125(a))*

## B.  TRADE DRESS INFRINGEMENT – ELEMENTS:

To state a claim for trade dress infringement, the burden is on the plaintiff to clearly identify the trade dress at issue.[1]

For identified trade dress to be protectable, a plaintiff must prove by a preponderance of the evidence that the trade dress is: (i) used in commerce; (ii) non-functional; and (iii) distinctive.

Should you find that Plaintiff has identified protectable trade dress, to prove infringement, a plaintiff must show by a preponderance of the evidence that the defendant used similar trade dress in a manner likely to cause confusion among consumers as to the product's source.

*Authority:  This Court in Smartling, Inc. v. Skawa Innovation, Ltd., 358 F. Supp. 3d 124, 146, 2019 U.S. Dist. LEXIS 15218, *26-27, 2019 WL 403856 (citing, inter alia, Yankee Candle Co. v. Bridgewater Candle Co., 259 F.3d 25, 31, fn. 9, (1st Cir. 2001).*

## C.  DISTINCTIVENESS:

---

[1] In many locations, these proposed instructions require filling in the following block: [describe the plaintiff's trade dress ] or its equivalent.  This portion requires an identification of the trade dress asserted.  "The burden to clearly identify the trade dress at issue is on the plaintiff."  Authority:  this Court (quoting Yankee Candle Co. v. Bridgewater Candle Co., 259 F.3d 25, 40 (1st Cir. 2001).

Plaintiff must prove that the overall design of [describe Plaintiff's trade dress] was distinctive when Defendant first began operating when the accused infringement began.   If Plaintiff fails to prove that the overall design of [describe Plaintiff's trade dress] was distinctive when the accused infringement began, then you must find for Defendant on Plaintiff's trade dress claims.

To prove distinctiveness, a plaintiff must prove by a preponderance of the evidence that the identified trade dress is inherently distinctive or has acquired secondary meaning.  A color itself can never be inherently distinctive.

Trade dress has developed secondary meaning when, in the minds of the public, the primary significance of it is to identify the source of the product rather than the product itself.

Secondary meaning must be judged at the time of the first alleged infringement.

Trade dress has secondary meaning when a significant quantity of the consuming public uses the mark to identify the source of the product or service.  Secondary meaning can be proved by direct evidence or indirect evidence.

Consumer surveys and testimony by individual consumers are the only direct evidence probative of secondary meaning.  Survey evidence is the "preferred" manner of demonstrating secondary meaning, namely that the public made a conscious connection between the trade dress at issue and plaintiff as the source of that trade dress.

Factors to be considered as indirect evidence of secondary meaning are:

    1) the length and manner of the use of the trade dress;

    2) the nature and extent of advertising and promotion;

3) the efforts to promote a conscious connection between the public, the trade dress, and the source;

4) the products' established place in the market (possibly through continuous use in the market); and

5) proof of intentional copying.

*Authority:  This Court in  Smartling, Inc. v. Skawa Innovation, Ltd., 358 F. Supp. 3d 124, 148-149, 2019 U.S. Dist. LEXIS 15218, \*32-35, 2019 WL 403856 (and the authority cited therein); Qualitex Co. v. Jacobson Products Co., 514 U.S. 159, 162-163, 131 L. Ed. 2d 248, 115 S. Ct. 1300) (color can never be inherently distinctive).*


**D.  FUNCTIONALITY:**

To be protectable, trade dress must be non-functional.  The trademark laws do not afford protection to functional features because that would enable trade dress owners to monopolize advances in functional design, putting others at an unfair competitive disadvantage and depriving consumers from the broadest dissemination of useful design features.  If exclusive use of a feature would put competitors at a significant non-reputation-related disadvantage, the feature in general terms is functional.

The plaintiff has the burden of proving non-functionality of the identified trade dress by a preponderance of the evidence.  If Plaintiff fails to show non-functionality, you must find for Defendant on all of Plaintiff's trade dress infringement claims.

A product feature is functional if it is essential to the product's use or purpose, or if it affects the product's cost or quality. It is non-functional if its shape or form makes no contribution to the product's function or operation. If the feature is part of the actual benefit that consumers wish to purchase when they buy the product, the feature is functional. However, if the

feature serves no purpose other than as an assurance that a particular entity made, sponsored or endorsed the product, it is non-functional.

To determine whether a product's particular shape or form is functional, you should consider whether the design as a whole is functional, that is whether the whole collection of elements making up the design or form are essential to the product's use or purpose. You should assess the following factors in deciding if the product feature is functional or non-functional:

(1) The Design's Utilitarian Advantage. In considering this factor, you may examine whether the particular design or product feature yield a utilitarian advantage over how the product might be without that particular design or product feature. If there is a utilitarian advantage from having the particular design or feature, this would weigh in favor of finding the design or feature is functional; if it seems merely ornamental, incidental, or arbitrary it is more likely to be nonfunctional.

(2) Availability of Alternate Designs. In considering this factor, you may examine whether an alternate design could have been used, so that competition in the market for that type of product would not be hindered by allowing only one person to exclusively use the particular design or configuration. For this to be answered in the affirmative, the alternatives must be more than merely theoretical or speculative. They must be commercially feasible. The unavailability of a sufficient number of alternate designs weighs in favor of finding the design or feature is functional.

(3) Advertising Utilitarian Advantage in the Design. In considering this factor, you may examine whether the particular design or configuration has been touted in any advertising as a utilitarian advantage, explicitly or implicitly. If a seller advertises the utilitarian advantages of a particular feature or design, this weighs in favor of finding that design or feature is functional.

(4) The Design's Method of Manufacture. In considering this factor, you may examine whether the particular design or feature result from a relatively simple or inexpensive method of manufacture. If the design or feature is a result of a particularly economical production method, this weighs in favor of finding the design or feature is functional; if the feature is essential to the use or purpose of the device or affects its cost or quality, it is more likely functional.

Authority:  Manual of Model Jury Instructions No. 15.12, United States Courts for the Ninth Circuit;  Modern Federal Jury Instructions-Civil 15.12 (2019); Traffix Devices, Inc. v. Mktg. Displays, Inc., 532 U.S. 23, 32 (2001); Qualitex Co. v. Jacobson Products Co., 514 U.S. 159, 165 (1995) ("If exclusive use of a feature would put competitors at a significant non-reputation-related disadvantage, the feature in general terms is functional."

**E.  COMPETITION AND COPYING:**

Trademark Law Encourages Competition.

Our legal system encourages free and vigorous competition because that is the core principle and driving force of the American economy. Imitation is an integral part of vigorous competition and innovation. To provide incentives for inventions and innovation, the fruits of the efforts of authors and inventors are protected by the copyright and patent laws. Those laws, however, are not at issue in this case.

This lawsuit was brought under the trademark and trade dress laws. Unlike the patent and copyright laws, the trademark laws are not intended to offer absolute rights against copying. Rather, the trademark laws are aimed at protecting consumers from mistake, confusion, and deception with regard to the source of a good or service.  Trademark and trade dress laws were not designed to protect originality or creativity, which are covered by copyright and patent law.

6

Therefore, under the trademark laws, unless copying is likely to confuse or deceive consumers it is not prohibited.

Overextension of trademark or trade dress rights can harm these consumer interests and inappropriately create copyright or patent-type rights where the laws are not meant to confer such rights. Unless a design, written work, or invention is properly the subject of a copyright or patent, the law favors competition and disfavors monopolization of products, ideas, or designs.

Copying is relevant to trade dress infringement only where the copying is of valid, protectable trade dress.  Copying cannot create trade dress rights where they do not exist.  There is no prohibition on copying elements that are not entitled to trade dress protection.

Trade dress protection must subsist with the recognition that in many instances there is no prohibition against copying goods and products.  In general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying.  Copying is not always discouraged or disfavored by the laws which preserve our competitive economy. Allowing competitors to copy will have salutary effects in many instances.

*Authority: TrafFix Devices, Inc. v. Mktg. Displays, Inc., 532 U.S. 23, 121 S.Ct. 1255, 1260, 149 L.Ed.2d 164 (2001); Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 34 (2003), 539 U.S. at 37, 123 S.Ct. at 2050); Wal-Mart Stores, Inc. v. Samara Bros., 529 U.S. 205, 213 (2000); Gurglepot, Inc. v. New Shreve, Crump & Low LLC, 153 F. Supp. 3d 441 (D. Mass. 2015); Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 26 (1st Cir. 2008); Bern Unlimited, Inc. v. Burton Corp., 95 F. Supp. 3d 184, 209-210, 2015 U.S. Dist. LEXIS 42151, \*55-56.  Yankee Candle Co. v. Bridgewater Candle Co., 259 F.3d 25, 31 (1st Cir. 2001); 15 U.S.C. § 1125.*

**F.  LIKELIHOOD OF CONFUSION:**

"Likely to cause consumer confusion" means more than the theoretical possibility of confusion.  The allegedly infringing conduct must create a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care.

You may consider the following non-exhaustive list of factors, when assessing the likelihood of confusion:

(1) the similarity of the trade dress; (2) the similarity of the goods (or, in a service mark case, the services); (3) the relationship between the parties' channels of trade; (4) the juxtaposition of their advertising; (5) the classes of prospective purchasers; (6) the evidence of actual confusion; (7) the defendant's intent in adopting its allegedly infringing mark; and (8) the strength of the plaintiff's mark.

*Authority:  This Court in* <u>Smartling, Inc. v. Skawa Innovation, Ltd.,</u> *358 F. Supp. 3d 124, 146 (and the authority cited therein).*

**(1)  SIMILARITY OF THE ASSERTED TRADE DRESS**

In assessing the similarity of Plaintiff's asserted trade dress and Defendant's design, you should consider the total effect of each.

**(2) THE SIMILARITY OF THE GOODS OR SERVICES**

You may consider the similarity of the goods or services offered by Plaintiff and Defendant as a factor tending to increase or decrease the likelihood of confusion.

**(3) RELATIONSHIP BETWEEN THE PARTIES' CHANNELS OF TRADE, (4) ADVERTISING, AND (5) CLASSES OF PROSPECTIVE PURCHASERS**

The relationship between the parties' channels of trade and advertising and the classes of prospective purchasers are often considered together in that they are interrelated.

The likelihood of confusion may be substantially reduced when the relevant class of buyers is composed of sophisticated professional or commercial purchasers of goods and services.  There is always less likelihood of confusion where goods are expensive and purchased after careful consideration. Informed professional buyers are less likely to be confused as to the source or origin of a product than ordinary consumers.

**(6)  ACTUAL CONFUSION:**

Actual confusion is not a prerequisite to a finding of likelihood of confusion.  However, when there is little or no evidence of actual confusion when the marks have been in the same market, side by side, for a substantial period of time, there is a strong presumption that there is little likelihood of confusion.

**(7)  DEFENDANT'S INTENT:**

In measuring intent, the relevant intent is not the intent to copy, but the bad faith intent to "pass off" one's goods as those of another—the intent to deceive purchasers as to the source of the product.

To prove bad faith, Plaintiffs must demonstrate that Defendants created their accused design with the intent to confuse or deceive consumers. Evidence of bad faith by Defendants weighs in favor of finding a likelihood of confusion, but it is not conclusive evidence. For instance, where a plaintiff demonstrates that a defendant has bad faith, but the evidence shows that consumers are not confused, the defendant's bad faith carries little weight for purposes of determining likelihood of confusion.

9

In determining whether a defendant acted in bad faith, it is important to distinguish between an intent to copy and an intent to confuse or deceive. To prove intentional copying, the plaintiff must show that defendant intentionally copied down to the smallest detail the product design. One may consider in determining whether a party intended to deceive or confuse whether they made efforts to avoid or minimize consumer confusion, such as through the inclusion of prominent or distinct brand names, logos, or designs. Absent evidence that that a party engaged in copying with intent to deceive or confuse consumers, bad faith cannot be found.

**(8) STRENGTH OF PLAINTIFF'S TRADE DRESS**

If the evidence establishes that the consuming public is exposed to third-party uses of similar designs on similar goods, this evidence is relevant to show that trade dress is relatively weak and entitled to only a narrow scope of protection. Third-party use may be relevant to show that the mark or a portion of asserted trade dress may be so commonly used that the public will look to other elements to distinguish the source of the goods or services.

How strongly a trademark indicates that a good comes from a particular source even if unknown is an important factor to consider in assessing its validity and for determining whether the trademark used by the defendant creates for consumers a likelihood of confusion with the plaintiff's trademark.

*Author*ity: This Court in Smartling, Inc. v. Skawa Innovation, Ltd., 358 F. Supp. 3d 124 (D. Mass. 2019) (and the authority cited therein); Bern Unlimited, Inc. v. Burton Corp., 95 F. Supp. 3d 184, 190 (1st Cir. 2015); Public Impact, LLC v. Boston Consulting Group, 169 F.Supp.3d 278, 294 (D. Mass. 2016) (quoting CMM Cable Rep., Inc. v. Ocean Coast Props., Inc., 888 F.Supp. 192 (D.Me.1995), order aff'd, 97 F.3d 1504 (1st Cir.1996); Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 12-13, 26 and citing Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112 (1st Cir. 2006); Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr., 103 F.3d 196 (1st Cir. 1996); Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769, 112 S. Ct. 2753, 120 L. Ed. 2d 615 (1992); Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 9 (2d Cir. 1976); Arrow Distilleries v. Globe Brewing Co., 117 F.2d 347, 349 (4th Cir. 1941) (citing Restatement (First) of Torts § 731 cmt.;

Equine Techs., Inc. v. Equitechnology, Inc., 68 F.3d 542, 544 (1st Cir. 1995) (citing Blinded Veterans Ass'n v. Blinded Am. Veterans Found., 277 U.S. App. D.C. 65, 872 F.2d 1035, 1040 (D.C. Cir. 1989),15 U.S.C. § 1052(f); Colt Def. LLC v. Bushmaster Firearms, Inc., 486 F.3d 701, 705 (1st Cir. 2007); Keebler Co. v. Rovira Biscuit Corp., 624 F.2d 366, 373-74 (1st Cir. 1980); 2 McCarthy, supra, §§ 12:1, 12:34, 15:1); Trademark Manual of Examining Procedure: TMEP 1207.01(d)(iii); Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee en 1772, 396 F.3d 1369, 1373, 73 USPQ2d 1689, 1693 (Fed. Cir. 2005); AMF Inc. v. American Leisure Products, Inc., 474 F.2d 1403, 1406, 177 USPQ 268, 269-70 (C.C.P.A. 1973); Plus Products v. Star-Kist Foods, Inc., 220 USPQ 541, 544 (TTAB 1983));  Manual of Model Jury Instructions No. 15.10, United States Courts for the Ninth Circuit.

## G.  ABANDONMENT:

The owner of trade dress cannot exclude others from using the trade dress if it has been abandoned.  The owner of trade dress abandons the right to exclusive use of the trade dress when use of the trade dress is discontinued with intent not to resume use.  Abandonment results in a concomitant loss in rights.

Defendant contends that, even if trade dress protection did exist, the trade dress has become unenforceable because Plaintiff abandoned it.  The defendant has the burden of proving abandonment by clear and convincing evidence.

You may infer intent not to resume use from the circumstances. Nonuse for 3 consecutive years is *prima facie* evidence of abandonment.

*Source:  15 U.S.C. § 1127;  Manual of Civil Jury Instructions No. 15.22, United States Courts for the Ninth Circuit (adapted to trade dress and limited to abandonment for nonuse).*

## H.  DAMAGES

## 1.  DAMAGES GENERALLY:

To recover damages, a plaintiff must prove actual harm.  (Authority:  <u>Aktiebolaget Electrolux v. Armatron Int'l Inc.</u>, 999 F.2d 1, 5 (1st Cir.1993).)

Damages must constitute compensation and not a penalty.  (Authority:  15 U.S.C. § 1117(a).)

An accounting of a defendant's profits, if any, can be permitted where it is found that the defendant acted in bad faith with the intention of causing confusion and deception.  (Authority:  <u>Aktiebolaget Electrolux v. Armatron International, Inc.</u>, 829 F. Supp. 458, 467 (1st Cir. 1993).)


Should you find that Plaintiff has identified protectable trade dress and that the defendant used similar trade dress in a manner likely to cause confusion among consumers as to the product's source, you may determine whether damages are to be assessed and, if so, in what amount.

## 2.  ACTUAL DAMAGES:

*Causation and Actual Confusion*

For a plaintiff to recover its actual damages, as opposed to Defendant's profits, Plaintiff must prove by a preponderance of the evidence:

1. that its damages were caused by Defendant's infringing use of their mark; and

2. that consumers were actually confused or deceived as a result of Defendant's conduct.

13

*Source: ABA Model Jury Instructions: Copyright, Trademark, and Trade Dress, § 2.8.2. (2008), Damages and Monetary Relief - Plaintiff's Actual Damages-Proof of Causation and Actual Confusion*

*Amount of Plaintiff's Actual Damages*

If you find that Plaintiff has proven infringement *and* that infringement caused Plaintiff injury, you must determine the amount of Plaintiffs' actual damages. Plaintiff must prove the amount of their damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate Plaintiff for any injury you find was caused by Defendant's infringement.

In determining the amount of Plaintiff's actual damages, you may include the following categories if you find them proven by Plaintiff:

(1) Any profits that Plaintiff would have earned from additional sales were it not for Defendant's infringement;

(2) Any injury to Plaintiff's goodwill, including injury to Plaintiffs' general business reputation;

(3) Any expense Plaintiffs incurred to try to prevent customers from being deceived; and

(4) The cost of any corrective advertising Plaintiffs might reasonably be required to engage in to correct any public confusion or harm to goodwill caused by the infringement.

*Source: ABA Model Jury Instructions: Copyright, Trademark, and Trade Dress, § 2.8.3. (2008), Damages and Monetary Relief - Amount of Plaintiff's Actual Damages*

## 3. DEFENDANT'S PROFITS

If you find that Defendant acted in bad faith with the intention of causing confusion and

deception, an accounting of a defendant's profits may be permitted.  (Authority:  <u>Aktiebolaget</u> <u>Electrolux v. Armatron International, Inc.</u>, 829 F. Supp. 458, 467 (1st Cir. 1993).)

In determining the amount of Defendant's profits to be awarded, Plaintiff has the initial burden of proving, by a preponderance of the evidence, Defendant's gross sales revenue resulting from the infringement.

Defendant then has the burden of proving, by a preponderance of the evidence, the amount of expenses that should be deducted from gross sales revenue to determine profit, and any portion of its profit it alleges is attributable to factors other than use of the infringing trademark.

Unless you find that Defendant proved that a portion of the profit from the sale of the products using the infringing trademark is attributable to factors other than use of the trademark, you shall find that the total profit is attributable to the infringement.

*Source: ABA Model Jury Instructions: Copyright, Trademark, and Trade Dress, § 2.8.5. (2008), Damages and Monetary Relief - Calculation of Defendant's Profits; 15 U.S.C. § 1117(a); Manual of Civil Jury Instructions No. 15.22, United States Courts for the Ninth Circuit.*

## 4.  SINGLE RECOVERY

You may not include in any award of profits any amount that you took into account in determining actual damages, and you may not include in any determination of actual damages any award of profits.  You also may not include in any award of damages for trade dress infringement any amount of damages awarded based on trademark infringement should you find trademark infringement based on the below.

### III.  Trademark Infringement

### A.  TRADEMARK INFRINGEMENT – ELEMENTS

Plaintiff has alleged that it has protectable rights in the mark SMARTLING.  A plaintiff alleging trademark infringement must prove by a preponderance of the evidence (1) that its mark is entitled to trademark protection, and (2) that the allegedly infringing use is likely to cause a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care.

Authority:  <u>Boston Duck Tours, LP v. Super Duck Tours</u>, LLC, 531 F.3d 1, 12 (1st Cir. 2008).


### B.  TRADEMARK - ENTITLEMENT TO PROTECTION

Plaintiff must prove by a preponderance of the evidence that the asserted mark is valid. A valid trademark is a word, name, symbol, device, or any combination of these items that is either:

inherently distinctive; or

descriptive, but has acquired a secondary meaning.

Only a valid trademark can be infringed. Only if you determine plaintiff proved by a preponderance of the evidence that the asserted mark is a valid trademark should you consider whether plaintiff owns it or whether defendant's actions infringed it.

Only if you determine that the asserted mark is not inherently distinctive should you consider whether it is descriptive but became distinctive through the development of secondary meaning.

*Source:  Manual of Model Jury Instructions No. 15.9, United States Courts for the Ninth Circuit.*

TRADEMARK ENTITLEMENT TO PROTECTION – SPECTRUM OF DISTINCTIVENESS

Spectrum of Distinctiveness

In order to determine if the plaintiff has met its burden of showing that SMARTLING is a valid trademark, you should classify it on the spectrum of trademark distinctiveness.

Trademark law categorizes proposed marks along a spectrum of distinctiveness, based on their capacity to serve such a source-identifying function. A mark is classified as: (1) generic (least distinctive), (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful (most distinctive). Marks classified as suggestive -- COPPERTONE for sun screen - arbitrary -- APPLE for computers -- or fanciful -- EXXON for petroleum products -- are all considered inherently distinctive because they have the capacity to serve a source-identifying function upon first use.

The more distinctive the trade mark is, the greater its influence in stimulating sales, its hold on the memory of purchaser and the likelihood of associating similar designations on other goods with the same source. If the trade mark is a coined word, such as Kodak, it is more probable that all goods on which a similar designation is used will be regarded as emanating from the same source than when the trade-mark is one in common use on the variety of goods, such as "Gold Seal" or "Excelsior".

Descriptive marks are those that "convey an immediate idea of the ingredients, qualities or characteristics of the goods" to which they are attached, such as SPORTS ILLUSTRATED for a sports magazine. Because descriptive marks are not inherently capable of serving as source-identifiers, such marks may only be protected (again measured at the time of the beginning of the alleged wrongful conduct) after the owner has provided sufficient evidence to establish that the

17

public associates the term or phrase not only with a specific feature or quality, but also with a single commercial source. When a descriptive phrase becomes associated with a single commercial source, the phrase is said to have "acquired distinctiveness" or "secondary meaning," and therefore functions as a trademark.  For example, when the public perceives the phrase SPORTS ILLUSTRATED as a particular sports magazine in addition to its primary meaning as a description of a specific feature or element, the phrase has "acquired distinctiveness" or "secondary meaning" and may receive trademark protection. "A mark is, therefore, considered distinctive (and, thus, eligible for trademark protection) if it either is inherently distinctive or exhibits acquired distinctiveness gained through secondary meaning."

Finally, a generic term, such as "car" or "pizza," is one that does not have capacity as a source-identifier because it designates the class, or "genus" of goods.  A generic term is one that does not distinguish the goods of one producer from the goods of others. Instead, it is one that either by definition or through common use has come to be understood as referring to the genus of which the particular product is a species.  Because they serve primarily to describe products rather than identify their sources, generic terms are incapable of becoming trademarks, at least in connection with the products that they designate.

Mark Distinctiveness and Validity

If you decide that SMARTLING is arbitrary or suggestive, it is considered to be inherently distinctive. An inherently distinctive trademark is valid and protectable.

On the other hand, if you determine that SMARTLING is generic, it cannot be distinctive and therefore is neither valid nor protectable. You must render a verdict for the defendant on the charge of trademark infringement.

If you decide that SMARTLING is descriptive, you will not know if the trademark is valid or invalid until you consider whether it has gained distinctiveness by the acquisition of secondary meaning.

Secondary meaning must be judged at the time of the first alleged infringement.

A trademark has secondary meaning when a significant quantity of the consuming public uses the mark to identify the source of the product or service.  Secondary meaning can be proved by direct evidence or indirect evidence.

Consumer surveys and testimony by individual consumers are the only direct evidence probative of secondary meaning.

Factors to be considered as indirect evidence of secondary meaning are:

1) the length and manner of the use of the trademark;

2) the nature and extent of advertising and promotion;

3) the efforts to promote a conscious connection between the public, the trademark, and the source;

4) the products' established place in the market (possibly through continuous use in the market); and

5) proof of intentional copying.

Authority:  This Court in  Smartling, Inc. v. Skawa Innovation, Ltd., 358 F. Supp. 3d 124, 148-149, 2019 U.S. Dist. LEXIS 15218, *32-35, 2019 WL 403856 (and the authority cited therein);

Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 12-13 and citing Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112 (1st Cir. 2006); Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr., 103 F.3d 196 (1st Cir. 1996); Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769, 112 S. Ct. 2753, 120 L. Ed. 2d 615 (1992); Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 9 (2d Cir. 1976); Arrow Distilleries v. Globe Brewing Co., 117 F.2d 347, 349 (4th Cir. 1941) (citing Restatement (First) of Torts § 731 cmt.;  Equine Techs., Inc. v. Equitechnology, Inc., 68 F.3d 542, 544 (1st Cir. 1995) (citing Blinded Veterans Ass'n v. Blinded Am. Veterans Found., 277 U.S. App. D.C. 65, 872 F.2d 1035, 1040 (D.C. Cir. 1989),15 U.S.C. § 1052(f); Colt Def. LLC v. Bushmaster Firearms, Inc., 486 F.3d 701, 705 (1st Cir. 2007); Keebler Co. v. Rovira Biscuit Corp., 624 F.2d 366, 373-74 (1st Cir. 1980); 2 McCarthy, supra, §§ 12:1, 15:1); *Manual of Model Jury Instructions* No. 15.10*, United States Courts for the Ninth Circuit.*

## C.  TRADEMARK – LIKELIHOOD OF CONFUSION

"Likely to cause consumer confusion" means more than the theoretical possibility of confusion.  The allegedly infringing conduct must create a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care.

You may consider the following non-exhaustive list of factors, when assessing the likelihood of confusion:

(1) the similarity of the marks; (2) the similarity of the goods (or, in a service mark case, the services); (3) the relationship between the parties' channels of trade; (4) the juxtaposition of their advertising; (5) the classes of prospective purchasers; (6) the evidence of actual confusion; (7) the defendant's intent in adopting its allegedly infringing mark; and (8) the strength of the plaintiff's mark.

No single factor is controlling.

## (1)  SIMILARITY OF THE MARKS

In assessing the similarity of the marks, you should consider the total effect of each mark in sight, sound, and meaning.

**(2) THE SIMILARITY OF THE GOODS OR SERVICES**

You may assess the similarity of the goods or services offered by Plaintiff and Defendant as a factor increasing or decreasing the likelihood of confusion.

**(3) RELATIONSHIP BETWEEN THE PARTIES' CHANNELS OF TRADE, (4) ADVERTISING, AND (5) CLASSES OF PROSPECTIVE PURCHASERS**

The relationship between the parties' channels of trade and advertising and the classes of prospective purchasers are often considered together in that they are interrelated.

The likelihood of confusion may be substantially reduced when the relevant buyer class is composed of sophisticated professional or commercial purchasers of goods and services. There is always less likelihood of confusion where goods are expensive and purchased after careful consideration. Informed professional buyers are less likely to be confused as to the source or origin of a product than ordinary consumers.

**(6) ACTUAL CONFUSION:**

Actual confusion is not a prerequisite to a finding of likelihood of confusion.  However, when there is little or no evidence of actual confusion when the marks have been in the same market, side by side, for a substantial period of time, there is a strong presumption that there is little likelihood of confusion.

**(7) DEFENDANT'S INTENT:**

In measuring intent, the relevant intent is not the intent to copy, but the bad faith intent to "pass off" one's goods as those of another—the intent to deceive purchasers as to the source of the product.

To prove bad faith, Plaintiffs must demonstrate that Defendants created their mark with the intent to confuse or deceive consumers. Evidence of bad faith by Defendants weighs in favor of finding a likelihood of confusion, but it is not conclusive evidence. For instance, where a plaintiff demonstrates that a defendant has bad faith, but the evidence shows that consumers are not confused, the defendant's bad faith carries little weight for purposes of determining likelihood of confusion.

In determining whether a defendant acted in bad faith, it is important to distinguish between an intent to copy and an intent to confuse or deceive. One may consider in determining whether a party intended to deceive or confuse whether they made efforts to avoid or minimize consumer confusion, such as through the inclusion of prominent or distinct brand names, logos, or designs. Absent evidence that that a party engaged in copying with intent to deceive or confuse consumers, bad faith cannot be found.

## (8)  STRENGTH OF PLAINTIFF'S MARK

If the evidence establishes that the consuming public is exposed to third-party uses of similar marks on similar goods, this evidence is relevant to show that a mark is relatively weak and entitled to only a narrow scope of protection. Third-party use may be relevant to show that the mark or a portion of a mark may be so commonly used that the public will look to other elements to distinguish the source of the goods or services.

How strongly a trademark indicates that a good comes from a particular source even if unknown is an important factor to consider in assessing its validity and for determining whether the trademark used by the defendant creates for consumers a likelihood of confusion with the plaintiff's trademark.

22

In assessing the strength of Plaintiff's mark, you should consider the Spectrum of Distinctiveness, which establishes their capacity to serve such a source-identifying function.

A generic mark can never be protected.  Just as a word or phrase may be classified as generic, so too can an image or logo that describes a category of goods or services rather than a specific source.

Descriptive marks occupy the lowest level that warrants protection, and a descriptive mark is entitled to trademark protection only if it has acquired secondary meaning—consumers associate the mark with a particular product.

A suggestive mark is considered to have inherent distinctiveness.

Arbitrary or fanciful marks are entitled to the greatest protection.

The more distinctive a trademark is, the greater its level of protection.   Conversely, the more that a trademark tends to descriptiveness, the lesser its level of protection.

*Authority:  This Court in Smartling, Inc. v. Skawa Innovation, Ltd., 358 F. Supp. 3d 124 (D. Mass. 2019) (and the authority cited therein); Public Impact, LLC v. Boston Consulting Group, 169 F.Supp.3d 278, 294 (D. Mass. 2016) (quoting CMM Cable Rep., Inc. v. Ocean Coast Props., Inc., 888 F.Supp. 192 (D.Me.1995), order aff'd, 97 F.3d 1504 (1st Cir.1996);   Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 12-13, 26 and citing Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112 (1st Cir. 2006);   Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr., 103 F.3d 196 (1st Cir. 1996);   Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769, 112 S. Ct. 2753, 120 L. Ed. 2d 615 (1992); Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 9 (2d Cir. 1976); Arrow Distilleries v. Globe Brewing Co., 117 F.2d 347, 349 (4th Cir. 1941) (citing Restatement (First) of Torts § 731 cmt.;   Equine Techs., Inc. v. Equitechnology, Inc., 68 F.3d 542, 544 (1st Cir. 1995) (citing Blinded Veterans Ass'n v. Blinded Am. Veterans Found., 277 U.S. App. D.C. 65, 872 F.2d 1035, 1040 (D.C. Cir. 1989),15 U.S.C. § 1052(f); Colt Def. LLC v. Bushmaster Firearms, Inc., 486 F.3d 701, 705 (1st Cir. 2007); Keebler Co. v. Rovira Biscuit Corp., 624 F.2d 366, 373-74 (1st Cir. 1980); 2 McCarthy, supra, §§ 12:1, 12:34, 15:1); Trademark Manual of Examining Procedure:  TMEP 1207.01(d)(iii); Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee en 1772, 396 F.3d 1369, 1373, 73 USPQ2d 1689, 1693 (Fed. Cir. 2005); AMF Inc. v. American Leisure Products, Inc., 474 F.2d 1403, 1406, 177 USPQ 268, 269-70 (C.C.P.A. 1973); Plus Products v. Star-Kist Foods, Inc., 220 USPQ 541, 544 (TTAB 1983)); Manual of Model Jury Instructions No. 15.10, United States Courts for the Ninth Circuit.*

## D.  DAMAGES

### 1.  DAMAGES GENERALLY:

To recover damages, a plaintiff must prove actual harm.  (Authority:   Aktiebolaget Electrolux v. Armatron Int'l Inc., 999 F.2d 1, 5 (1st Cir.1993).)

Damages must constitute compensation and not a penalty.  (Authority:  15 U.S.C. § 1117(a).)

An accounting of a defendant's profits, if any, can be permitted where it is found that the defendant acted in bad faith with the intention of causing confusion and deception.  (Authority: Aktiebolaget Electrolux v. Armatron International, Inc., 829 F. Supp. 458, 467 (1st Cir. 1993).)

Should you find that SMARTLING is a protectable trademark and that the defendant used similar trademark in a manner likely to cause confusion among consumers as to the product's source, you may determine whether damages are to be assessed and, if so, in what amount.

### 2.  ACTUAL DAMAGES:

*Causation and Actual Confusion*

For a plaintiff to recover its actual damages, as opposed to Defendant's profits, Plaintiff must prove by a preponderance of the evidence:

1. that its damages were caused by Defendant's infringing use of their mark; and

2. that consumers were actually confused or deceived as a result of Defendant's conduct.

*Source: ABA Model Jury Instructions: Copyright, Trademark, and Trade Dress, § 2.8.2. (2008), Damages and Monetary Relief - Plaintiff's Actual Damages-Proof of Causation and Actual Confusion*

*Amount of Plaintiff's Actual Damages*

If you find that Plaintiff has proven infringement *and* that infringement caused Plaintiff injury, you must determine the amount of Plaintiffs' actual damages. Plaintiff must prove the amount of their damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate Plaintiff for any injury you find was caused by Defendant's infringement.

In determining the amount of Plaintiff's actual damages, you may include the following categories if you find them proven by Plaintiff:

(1) Any profits that Plaintiff would have earned from additional sales were it not for Defendant's infringement;

(2) Any injury to Plaintiff's goodwill, including injury to Plaintiffs' general business reputation;

(3) Any expense Plaintiffs incurred to try to prevent customers from being deceived; and

(4) The cost of any corrective advertising Plaintiffs might reasonably be required to engage in to correct any public confusion or harm to goodwill caused by the infringement.

*Source: ABA Model Jury Instructions: Copyright, Trademark, and Trade Dress, § 2.8.3. (2008), Damages and Monetary Relief - Amount of Plaintiff's Actual Damages*

## 3. DEFENDANT'S PROFITS

If you find that Defendant acted in bad faith with the intention of causing confusion and

deception, an accounting of a defendant's profits may be permitted.  (Authority:  <u>Aktiebolaget</u> <u>Electrolux v. Armatron International, Inc.</u>, 829 F. Supp. 458, 467 (1st Cir. 1993).)

In determining the amount of Defendant's profits to be awarded, Plaintiff has the initial burden of proving, by a preponderance of the evidence, Defendant's gross sales revenue resulting from the infringement.

Defendant then has the burden of proving, by a preponderance of the evidence, the amount of expenses that should be deducted from gross sales revenue to determine profit, and any portion of its profit it alleges is attributable to factors other than use of the infringing trademark.

Unless you find that Defendant proved that a portion of the profit from the sale of the products using the infringing trademark is attributable to factors other than use of the trademark, you shall find that the total profit is attributable to the infringement.

*Source: ABA Model Jury Instructions: Copyright, Trademark, and Trade Dress, § 2.8.5. (2008), Damages and Monetary Relief - Calculation of Defendant's Profits; 15 U.S.C. § 1117(a); Manual of Civil Jury Instructions No. 15.22, United States Courts for the Ninth Circuit.*

## 4.  SINGLE RECOVERY

You may not include in any award of profits any amount that you took into account in determining actual damages, and you may not include in any determination of actual damages any award of profits.  You also may not include in any award of damages for trademark infringement any amount of damages awarded based on trade dress infringement should you find trade dress infringement based on the instructions set forth in that regard.

Dated:  May 23, 2019                              Respectfully submitted,

                                                  Defendant, by its Attorney,

                                                  _/s/ Thomas P. O'Connell_
                                                  Thomas P. O'Connell
                                                  BBO # 567,644
                                                  O'Connell Law Office
                                                  1026A Massachusetts Avenue
                                                  Arlington, MA 02476
                                                  tpo@oconnellusa.com
                                                  Telephone: 781.643.1845
                                                  Facsimile: 781.643.1846

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Defendant's Proposed Instructions to the Jury, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent via first class mail to those identified as non-registered participants.

Dated:  May 23, 2019                              */s/ Thomas P. O'Connell*
                                                          Thomas P. O'Connell